# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SCOTT KANVICK,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF RENO, *et al.*,<br><br>  Defendants. | 3:15-cv-00631-RCJ-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's amended *pro se* complaint (ECF No. 5). Consistent with the following, the court recommends that the amended complaint proceed as to certain defendants and claims, and be dismissed as to others.

## I. PROCEDURAL HISTORY

Scott Kanvick ("plaintiff") is a pre-trial detainee, presently held at the Washoe County Detention Facility in Reno, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff filed a civil rights complaint (ECF No. 4) and an application to proceed *in forma pauperis* (ECF No. 1) on December 31, 2015. On April 21, 2016, the court granted the application to proceed *in forma pauperis* and screened plaintiff's original complaint (ECF No. 3).

The court's screening order permitted plaintiff to proceed against William Bruton ("Bruton") and Juan Lopez ("Lopez") on two counts of unlawful arrest and one count of excessive bail. (*Id.* at 4–5.) Any claims asserted against the other defendants named in the complaint were dismissed with leave to amend to rectify, if possible, the deficiencies identified. (*Id.* at 6–8.) Plaintiff also advised that any allegations, parties, or requests for relief not carried forward into an amended complaint would no longer be before the court. (*Id.*) The court received plaintiff's amended complaint (ECF No. 5) on May 25, 2016. This report and recommendation follows.

## II.     LEGAL STANDARD

Section 1915 provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).  Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard when reviewing the adequacy of a complaint under § 1915. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

Under Rule 12(b)(6), the court is to dismiss when the complaint fails to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Courts accept as true all well-pled factual allegations, set aside legal conclusions, and verify that the factual allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the complaint need not contain detailed factual allegations, it must offer more than "a formulaic recitation of the elements of a cause of action" and "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. The complaint is construed in the light most favorable to the plaintiff. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

The court takes particular care when reviewing the pleadings of a *pro se* plaintiff, as a more forgiving standard applies to litigants not represented by counsel. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).  In addition, a *pro se* plaintiff must be given notice of the deficiencies of the complaint and leave to amend, unless amendment would be futile. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).  Despite this leniency, a district court may in its discretion dismiss an *in forma pauperis* complaint if the claim "lacks an arguable basis in either law or fact." *Id.*  This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations.

## III. DISCUSSION

The amended complaint rearticulates many of the factual allegations of the original complaint, including that defendants conspired to arrest and detain plaintiff in order to interfere with his child custody proceedings in family court, and to take control of his business and estate. (ECF No. 5 at 4.) Nevertheless, due to some variations, the court finds it useful to again summarize the parties and claims involved. Plaintiff alleges four counts against the following defendants: the City of Reno; the Reno Police Department ("RPD"); RPD Officers Lopez, Bruton, Donald Braunworth ("Braunworth"), Eugenio Bueno ("Bueno"), and Investigator Matthew Edelen ("Edelen"); and Rachel Braunworth-Lopez ("Braunworth-Lopez"), plaintiff's ex-fiancé. (*Id.* at 1–4.) As set forth in the complaint, Counts I and II profess to assert violations of the Fourth Amendment for false arrest and the Fourteenth Amendment's Equal Protection Clause. Count III asserts violations of the Eighth Amendment's prohibition on excessive bail and the Fourteenth Amendment's Equal Protection Clause. Count IV asserts violations of the Fourteenth Amendment's Equal Protection Clause. For these violations plaintiff seeks injunctive relief and compensatory and punitive damages. (*Id.* at 17.)

In Count I, plaintiff alleges that he was arrested on October 19, 2015 for stalking Braunworth-Lopez and for failing to register as an ex-felon, two misdemeanors under Nevada law. (ECF No. 5 at 6.) Bruton held and questioned plaintiff in an alley for an hour and fifteen minutes, and was "forcefully aggressive" in his attempts to get plaintiff to admit to crimes he did not commit. (*Id.*) During that time Bruton made phone calls to Braunworth, who coached him on what to say. (*Id.*) After an hour Lopez arrived at the scene to serve plaintiff with a temporary restraining order ("TRO") on behalf of Braunworth-Lopez. (*Id.* at 6–7.) Lopez assured plaintiff that he would not be arrested if he signed the TRO, but once plaintiff did so Lopez placed him in handcuffs. (*Id.* at 7.) Soon after, while inside the police cruiser, plaintiff noticed that a computer screen stated he had been arrested at 9:01 a.m., even though it was then 10:16 a.m. (*Id.* at 7–8.) Plaintiff maintains that there was no evidence for the arrest, and that it was based on Braunworth, Lopez, and Bruton's dislike for plaintiff and personal feelings for Braunwoth-Lopez. (*Id.* at 7.) Further, he contends that the RPD has a practice of "leaving the record one-sided or without

3

evidence," allowing officers to violate individuals' constitutional rights without being held accountable. (*Id.* at 8.)

In count II, plaintiff alleges that he was arrested again on November 3, 2015 for violation of the TPO and failing to register as an ex-felon. (*Id.* at 9.) Lopez located plaintiff in the same alley where the October 19 arrest was made and attempted to extract a confession for crimes plaintiff had not committed. (*Id.*) Bruton was present and on the phone with Braunworth and Bueno, who coached him on what to say. (*Id.*) Plaintiff alleges that he, Lopez, and Bruton discussed plaintiff's business, his relationship with Braunworth-Lopez, and his and Braunworth-Lopez's child custody proceedings, but that none of plaintiff's statements were included in the records of the arrest. (*Id.* at 9–10.) Moreover, Braunworth did not file any supplementary documents even though he participated in both the October 19 and November 3 arrests and provided testimony thereon. (*Id.* at 10.) As such, plaintiff maintains that Braunworth, Bruton, and Lopez hid exculpatory evidence. (*Id.* at 10.)

In count III, plaintiff alleges that on November 3, 2015, after he was arrested, Lopez and Edelen "went out of their way" to have plaintiff's October 19 bail revoked and enhanced. (*Id.* at 11.) Meanwhile, Bruton placed plaintiff into another transport vehicle, where plaintiff sat for forty-eight minutes. (*Id.*) The officer who eventually transported plaintiff to the county jail called the charges against him "chicken shit," and "basically a citation." (*Id.*) By the time plaintiff arrived at jail, the bail amount had been set for $20,750 "cash only," six times greater than the State mandate. (*Id.*) Plaintiff maintains that the amount was excessive because he is a local business owner, posed no flight risk, and is non-violent. (*Id.*) He contends that the "Officers" (presumably Lopez and Edelen) caused the bail enhancement in order to prevent plaintiff from attending his custody hearing set for 8 a.m. the next morning and to prejudice the family court judge against him. (*Id.*)

In count IV, plaintiff alleges that the conspiracy between defendants began as early as June 2015. He describes a series of interactions between himself, the RPD officers, and Braunworth-Lopez that took place during the summer and fall of 2015, and contends that Edelen had some influence over the family court which he used against plaintiff. (ECF No. 5 at 12.)

Plaintiff also implicates the City of Reno and RPD in the alleged conspiracy, stating that the entities protected the officers' lawlessness. (*Id.* at 14.) As evidenced by the deliberate actions taken against him, plaintiff maintains that he was treated differently than other similarly situated pre-trial detainees. (*Id.*)

### A.     Private Actor Liability under § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and is "merely . . . the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official who acts under the color of state law. *Anderson*, 451 F.3d at 1067. In addition, the plaintiff must allege that each defendant personally participated in the violation. *Jones v. Williams*, 297 F.3d 930, 934 (2002).

Section 1983 is inapplicable to private parties unless it is shown that the private action is "fairly attributable" to the government. *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002). "The Supreme Court has articulated four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Id.* at 445. Under the joint action test, the only relevant to the facts at hand, a plaintiff may demonstrate joint action by proving the existence of a conspiracy. *Id.* This requires the plaintiff to "show an agreement or meeting of the minds to violate constitutional rights." *Id.* (quotation omitted). Moreover, where the violations alleged were committed by a state actor rather than by the private individual, the plaintiff must also show that the private individual "was the proximate cause of the violations." *Id.* That the individual complained to, was involved with, or even had some influence over the state actor is insufficient to establish proximate cause. *Arnold v. IBM Corp.*, 637 F.2d 1350, 1357 (9th Cir.

1981); *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989).  Rather, he or she must have exercised control over the state actor's decision to commit the alleged violations.  *Mann v. City of Tucson, Dep't of Police*, 782 F.2d 790, 793 (9th Cir. 1986); *Franklin*, 312 F.3d at 446.

Woven throughout Counts I through IV are allegations that Braunworth-Lopez, a private individual, "us[ed] the power of [the] police" and shared a common goal to deny plaintiff his constitutional rights by having him arrested and detained.  (ECF No. 5 at 3–14.)  Having now thoroughly reviewed the assertions of the amended complaint as well as the original, the court is not persuaded that Braunworth-Lopez's involvement is anything more than a fantastic, delusional scenario concocted by plaintiff.  Despite a robust collection of fanciful factual contentions, plaintiff offers few facts that reasonably support the notion that she was behind the events alleged.  Moreover, even if true, plaintiff's assertions are grossly insufficient to show proximate cause.  It is not enough that the RPD officers may have been motivated to act in favor of Braunworth-Lopez or against plaintiff; to hold Braunworth-Lopez liable under § 1983 plaintiff must show she controlled their decision-making.  Here, however, plaintiff has not stated facts from which the court could infer that any of the RPD officers "failed to exercise their own independent judgment" in effecting his arrest or bail.  *See Franklin*, 312 F.3d at 446.  Because there is no indication that he could cure these deficiencies through further amendment, the court recommends that the claims against Braunworth-Lopez be dismissed without leave to amend and with prejudice.  *See Cato*, 70 F.3d at 1106; *Frank v. City of Henderson*, 2015 WL 5562582, at *5 (D. Nev. Sept. 21, 2015) (finding further leave to amend futile where plaintiff amended the complaint and again failed to allege sufficient facts to support § 1983 claim).

**B.     Municipal Liability under § 1983**

A municipality or municipal entity may be liable under 42 U.S.C. § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).  However, municipalities are "responsible only for 'their *own* illegal acts'" and cannot be held liable for simply employing a tortfeasor.  *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).  The Ninth

Circuit has recognized three ways in which municipal liability may be shown: (1) the constitutional violation was the result of "official policies or established customs" of the municipality; (2) the municipality's deliberate or conscious act of omission, such as a failure to adequately train its employees, amounted to an official policy; or (3) the constitutional violation was committed by "an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010).

Where a plaintiff's theory of liability is failure to train, the "omission must amount to 'deliberate indifference' to a constitutional right." *Id.* at 1249. Deliberate indifference is a high standard, met only "when 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City Canton v. Harris*, 489 U.S. 378, 390 (1989)); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012) (deliberate indifference requires that the municipality "was on actual or constructive notice that its omission would likely result in a constitutional violation"). Put another way, the failure to train must "reflect[] a 'deliberate' or "conscious" choice by a municipality." *Canton*, 489 U.S. at 389. Only then is a "'policy of inaction . . . the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick*, 563 U.S. at 61–62 (quoting *Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part).).

Previously, the rule within the Ninth Circuit was that a claim of municipal liability could survive a motion to dismiss even if "based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Shah v. Cnty. of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986); *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). However, the Ninth Circuit has since made clear that claims of municipal liability must adhere to the pleading requirements set forth in *Twombly* and *Iqbal*: (1) "'to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action,'" and (2) "'factual allegations that are taken as true must plausibly suggest an entitlement to relief.'" *AE ex rel. Hernandez v. Cnty. of Tulare*,

666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)); *see also La v. San Mateo Cnty. Transit Dist.*, No. 14-cv-01768-WHO, 2014 WL 4632224, at *7 (N.D. Cal. Sept. 16, 2014).

The amended complaint vaguely states that RPD officers are not held accountable, that "lawlessness runs rampant," that the City of Reno "failed to supervise and train officers," and that RPD's policies and procedures were "deliberately indifferent to [the] rights of plaintiff." (ECF No. 5 at 2, 8, 14.) Nothing more is said about the City of Reno's training practices, specific policies and procedures are not identified, and plaintiff does not allege how such policies led to the violations complained of. Because the threadbare assertions simply recite the elements of a cause of action, with insufficient underlying facts to give fair notice to the defending parties, they are not entitled to the presumption of truth. *See AE ex rel. Hernandez*, 666 F.3d at 637. Accordingly, all claims against the City of Reno and RPD should be dismissed with leave to amend for failure to state a claim upon which relief may be granted.

**C.  Fourteenth Amendment (Counts I, II, III, and IV)**

The Equal Protection Clause of the Fourteenth Amendment is intended to prevent intentional and arbitrary discrimination, *see Engquist v. Oregon Dep't of Ag.*, 553 U.S. 591, 611 (2008) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)), and thus requires the government to treat similarly situated people equally, *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To state a claim, "a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Alternatively, a plaintiff who is not a member of a protected class may bring a claim as a "class of one" by alleging that he or she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002) (citing *Olech*, 528 U.S. at 564). Courts have typically required that a plaintiff proceeding on a "class of one" theory demonstrate an "extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d

55, 59 (2d Cir. 2010); *see also Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011) (evidence of disparate treatment not enough to support equal protection claim where "the two groups [were] not alike in all relevant respects").

Plaintiff has not alleged membership in a protected class, but in Count IV contends that he qualifies as a "class of one" because he was treated differently than "other pre-trial detainees similarly situated or of similar circumstances." (ECF No. 5 at 14.) Critically, however, the entirety of the amended complaint pertains to actions taken by defendants between June 2015 and November 3, 2015, prior to the point at which plaintiff became a pre-trial detainee. Thus, with respect to the allegations currently before the court, other pre-trial detainees are not a proper group against which plaintiff may be compared. *See, e.g.*, *Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 942 (N.D. Cal. Feb. 10, 2014) (holding that plaintiff stated class-of-one claim where police officers arrested him but not his fiancé, even though they were engaged in the same behavior); *Hanes v. Zurick*, 578 F.3d 491, 492 (7th Cir. 2009) (holding that plaintiff stated a class-of one claim against police officers that repeatedly arrested him, but not his similarly-situated neighbors, for reasons of personal animus). To the extent that plaintiff challenges his treatment after being detained, insufficient facts have been alleged regarding that period to show "a right to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. Therefore, the court recommends that the Fourteenth Amendment claims in Counts I through IV be dismissed with leave to amend.

**D.      Fourth Amendment Unlawful Arrest (Counts I and II)**

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). Probable cause exists "when the facts and circumstances within [the officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). A reviewing court looks to the totality of the circumstances known to the officer at the time of the arrest. *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010). "If an officer has probable cause to believe that an individual has committed even a very minor

criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Further, "[i]f the facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006).

Viewing the allegations in the most favorable light, plaintiff has alleged that Bruton and Lopez arrested him without probable cause on October 19 and November 3, 2015. Further, although not present at the scene, Braunworth and Bueno participated in the arrests by "coaching" Bruton over the phone—Braunworth on October 19, and both Braunworth and Bueno on November 3. At this stage in the proceedings, the allegations are sufficient to state a colorable claim for unlawful arrest. Therefore, Counts I should proceed against Bruton, Lopez, and Braunworth, and Count II will proceed against Bruton, Lopez, Braunworth, and Bueno. Because plaintiff has not alleged that Edelen personally participated in either arrest, any Count I or II claims against him should be dismissed.[1]

In allowing Counts I and II to proceed, the court notes that plaintiff's claims may be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Section 1983 and "the federal habeas corpus statute, 28 U.S.C. § 2254, both provide access to the federal courts 'for claims of unconstitutional treatment at the hands of state officials, . . . [but] they differ in their scope and operation.'" *Ramirez v. Galaza*, 334 F.3d 850, 854 (9th Cir. 2003) (quoting *Heck*, 512 U.S. at 480). Federal courts must take care to prevent prisoners from relying on § 1983 to subvert the differing procedural requirements of habeas corpus proceedings. *Heck*, 512 U.S. at 481, 486–87. In *Heck*, the Supreme Court held that if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

---

[1] The only mention of Edelen in connection to the arrests is made in plaintiff's initial description of defendants' actions taken under color of state law. (ECF No. 5 at 3 ("[Edelen] helped enact a false arrest and detainment of plaintiff on 10/19/15 and 11/3/15 . . . .").)

10

It is not clear whether plaintiff has been convicted for the charges stemming from his October 19 or November 3 arrests. If he was, however, the claims that he was arrested without probable cause will be barred by *Heck*, as a judgment in his favor would imply the conviction was invalid.

**E.     Eighth Amendment Excessive Bail (Count III)**

The Eighth Amendment's "Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of valid interests the state seeks to protect by offering bail." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007). Both the Supreme Court and the Ninth Circuit have assumed, but never decided, that the Clause is incorporated against the states. *Id.* at 659. Bail is considered excessive if set at a figure higher than an amount reasonably calculated to achieve the government's valid interests. *Id.* at 660 (citing *United States v. Salerno*, 481 U.S. 739, 754 (1987); *Stack v. Boyle*, 342 U.S. 1, 3 (1951)). To prevail on a claim under § 1983, a plaintiff must show that the putative governmental interest is invalid or that "bail was excessive in light of the purpose for which it was set." *Id.* at 661. Whether the amount is beyond the plaintiff's means is irrelevant. *Id.* at 662. In addition, the plaintiff must demonstrate that the defendants were the "actual and proximate cause of his bail enhancement." *Id.* at 663.

Plaintiff has alleged that on November 3, 2015, Lopez and Edelen "went out of their way" to have plaintiff's previous bail revoked and enhanced, and that was set at $20,750 by the time plaintiff arrived at the jail. He contends that the officers did so in order to keep plaintiff in jail, and that the amount was excessive in light of the statutory mandate and the limited threat plaintiff posed. Accepting plaintiff's allegations as true, plaintiff states a colorable excessive bail claim against the two officers. Therefore, Count III should proceed against Edelen and Lopez.[2]

---

[2] Upon screening the original complaint, the court allowed Count III to proceed against Lopez and Bruton based on plaintiff's allegations that the officers placed phone calls to a city official to increase plaintiff's bail. (ECF No. 3 at 5.) In the screening order plaintiff was advised that any allegations not carried forward into the amended complaint would no longer be before the court. (*Id.* at 8.) Because Count III of the amended complaint does not allege that Bruton was an "actual and proximate cause of [plaintiff's] bail enhancement," any such claim against him is dismissed. *See Galen*, 477 F.3d at 663.

11

### III.   CONCLUSION

For the reasons stated herein, the court recommends that Counts I, II, and III proceed against Bruton, Lopez, Braunworth, Bueno, and Edelen, consistent with the above. Count IV, as well as any Fourteenth Amendment claims asserted in Counts I through III, should be dismissed with leave to amend, as should all claims asserted against the City of Reno and RPD. Finally, the claims against Braunworth-Lopez should be dismissed with prejudice and without leave to amend, as amendment would be futile. *See Cato*, 70 F.3d at 1106.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of judgment.

### IV.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that **COUNT I** be allowed to **PROCEED** as a Fourth Amendment unlawful arrest claim against Bruton, Lopez, and Braunworth, and be **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND** against Edelen, the City of Reno, and RPD.

**IT IS FURTHER RECOMMENDED** that **COUNT II** be allowed to **PROCEED** as a Fourth Amendment unlawful arrest claim against Bruton, Lopez, Braunworth, and Bueno, and be **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND** against Edelen, the City of Reno, and RPD.

**IT IS FURTHER RECOMMENDED** that **COUNT III** be allowed to **PROCEED** as an Eighth Amendment excessive bail claim against Edelen and Lopez, and be **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND** against Bruton, the City of Reno, and RPD.

**IT IS FURTHER RECOMMENDED** that **COUNT IV** be **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND** against Bruton, Lopez, Braunworth, Bueno, Edelen, the City of Reno, and RPD.

**IT IS FURTHER RECOMMENDED** that **COUNTS I, II, III,** and **IV** be **DISMISSED WITH PREJUDICE, WITHOUT LEAVE TO AMEND** against Braunworth-Lopez.

**IT IS FURTHER RECOMMENDED** that plaintiff have **thirty (30) days** from the date the District Court order is entered to file a second amended complaint remedying, if possible, the defects identified above for which leave to amend is granted.  The second amended complaint must be a complete document in and of itself, and will supersede the first amended complaint in its entirety.  Any allegations, parties, or requests for relief from prior papers that are not carried forward in the second amended complaint will no longer be before the court.  Plaintiff is advised that if he does not file a second amended complaint within the specified time period, his complaint shall proceed against only Bruton, Lopez, Braunworth, Bueno, and Edelen, as set forth in this report and recommendation.  Plaintiff should clearly title the amended complaint by placing the words "SECOND AMENDED" immediately above "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" on page 1 in the caption, and place the case number, 3:15-cv-00631-RCJ-VPC, above the words "SECOND AMENDED."

**DATED**: August 25, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**